# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3285 | **DATE** | 2/11/2003 |
| **CASE TITLE** | Walker vs. Marca Construction, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendant's motion for summary judgment (6-1). Judgment is entered in favor of the defendant.

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHARON L. WALKER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 02 C 3285 |
| ) | |
| MARCA CONSTRUCTION INC., ) | |
| ) | |
| Defendant. ) | |

DOCKETED

FEB 1 2 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Sharon L. Walker has sued Marca Construction, Inc.[1] for sex and national origin discrimination, alleging that Marca refused to hire her as a carpenter because she is a female of African descent. Her claim arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. Marca has moved for summary judgment, arguing that it is not an "employer" as defined by 42 U.S.C. § 2000e(b) and therefore cannot be held liable under Title VII.

## DISCUSSION

Title VII prohibits unlawful employment practices, including the failure of an employer to hire "any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). But some small employers are exempt from Title VII liability. Title VII defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the

---

[1] The parties agree that at all times relevant to this case Marca operated as a proprietorship owned by Eric Higginbottom. Marca insists that it is now a Limited Liability Partnership, and that it has never been incorporated, but the issue is irrelevant to this motion.

current or proceeding calendar year ..." 42 U.S.C. § 2000e(b). In its motion for summary judgment, Marca offers evidence that it did not employ fifteen or more employees for each working day in any twenty week period in 2000 and 2001.[2] Walker responds with evidence relating to two separate arguments. First, she disputes the accuracy of Marca's employment records and insists that the company regularly employed at least fifteen workers during 2000 and 2001. In the alternative, Walker acknowledges that Marca is too small to qualify as an employer, but argues that it should be "deemed covered" by Title VII as a part of "an affiliated group of corporations that has in the aggregate the minimum number of employees." *Papa*, 166 F.3d at 937.

Under Rule 56(c), summary judgment may be granted only if there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is considered "genuine" if a reasonable trier of fact could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether or not a genuine issue of material fact exists, we must view the facts in a light favorable to Walker, the non-moving party in this case, drawing all inferences in her favor. *Celotex*, 477 U.S. at 322.

I. **Fewer than Fifteen Employees**

As evidence that it did not employ the minimum number of employees for at least twenty consecutive calendar weeks during 2000 and 2001, Marca has submitted its payroll records for those years. *See* Decl. of Eric Higginbottom, Ex. A; Supp. Decl. of Eric Higginbottom, Ex C. Marca has also submitted a summary of its records, listing each employee for each pay period

---

[2] The parties agree that since Walker's alleged injury occurred in June, 2001, calendar years 2000 and 2001 are the years to be reviewed in determining whether Marca qualifies as a Title VII "employer." *See Komorowski v. Townline Minimart and Restaurant*, 162 F.3d 962, 965-66 (7th Cir. 1998).

2

during 2000 and 2001 and tallying the number of employees for each week. *See* Decl. of Shanda Coleman; Ex A. The records show that Marca never employed as many as fifteen workers a week during 2000 and that it employed fifteen or more workers for only nine weeks during 2001. *See Id.* Walker, however, disputes these figures. She contends that Marca submitted reports to the Chicago & Northeast Illinois District Council of Carpenters ("Carpenters Union") accounting for as many as twenty-one carpenter employees during various periods in 2000 and 2001. *See* Pl's Local Rule 56.1 Resp., ¶ 4. She also identifies three Marca-employed carpenters, Ivan Solis, Allendre Solis and Juan Solis, who she claims should be counted as Marca's employees for an additional week during 2001. *Id.*, ¶¶ 5-8. In addition, she argues that Thomas Tulley, Marca's superintendent, was not properly accounted for in the summary of its payroll records and that he should be added to the weekly totals for both 2000 and 2001. *Id.*, ¶ 4. Finally, Walker asserts that Marca regularly employed office support staff whose numbers were omitted from its 2000 and 2001 payroll records. *Id.* ¶ 13.

Though Walker enjoys the benefit of any inferences drawn in our examination of the facts, we note that it is her burden to show that there is a genuine issue of fact as to Marca's status as a Title VII "employer." She cannot simply quarrel with Marca's payroll records; rather she must set forth facts from which a reasonable juror could find that Marca employed at least fifteen employees for at least 20 weeks in 2000 and 2001. *See Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001)(explaining that a party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial). With this in mind, we turn our attention to the evidence submitted with Walker's response. To show that Marca undercounts its employees, she

submits the sworn affidavit of Earl Oliver, the contributions manager for the Carpenters Union's Fringe Benefit Fund. Oliver attests that Marca is a signatory employer to the Carpenters Union and is obligated to report its carpenter employees to the Union on a monthly basis. Oliver Affidavit, ¶ 2. Oliver points to a "Combined Fringe Benefit and Dues Checkoff Report" apparently completed by Marca that appears to account for more than fifteen carpenters under Marca's employ during the last seven weeks of 2001. Oliver Affidavit, ¶ 3, Ex. A. Also attached as an exhibit to the Oliver affidavit is a report of an audit purportedly conducted on behalf of the Carpenters Union which, contrary to Marca's payroll records, suggests that Juan Solis, Allendre Solis and Ivan Solis were employed by Marca as carpenters during the February 16, 2001 pay period. Oliver Affidavit, Ex. B. A series of photocopied "Employee Identification Cards" are appended to the report in an effort to confirm the Solis brothers' Februrary 2001 employment with Marca. *Id.* Walker also refers to the audit report as evidence that Marca's payroll records fail to disclose certain office personnel employed in 2000 and 2001. Pl's 56.1 Statement, ¶ 4. Specifically, Walker points to the auditors' written observation that "Gloria Scardino works for East Lake Management," that she "prepares the payroll and quarterly payroll reports for [Marca]," and that it appears that Ms. Scardino does not receive payment from Marca. Oliver Affidavit, Ex. A. Walker proffers no evidence in support of her claim that Tom Tully's employment is not properly accounted for in Marca's payroll records.

Reviewing Walker's evidence in a light most favorable to her, we do not believe that a reasonable juror could conclude that Marca employed at least 15 employees for twenty weeks in each of 2000 and 2001. Putting aside the hearsay and foundation objections Marca raises in response to the Oliver affidavit and the audit report, and accepting as true the contents of those

4

exhibits, the numbers simply do not add up. First, Marca's payroll records themselves disclose that it employed more than fifteen carpenters during December, 2001. *See* Suppl. Decl. of Eric Higginbottom, Ex. C. Marca does not dispute this point, and thus the Carpenters Union's records add nothing to the equation. Further, adding the Solis brothers to the pool of employees paid on February 16, 2001 only raises the total for that week from six employees to nine. At best, Walker's evidence shows no more than what Marca readily admits: that it employed 15 or more workers for nine weeks during 2001. Even allowing that Walker might shore up evidence at trial to show that Tom Tully and Gloria Scardino should be added to each weekly total, she would be able to prove only that Marca reached the threshold number of employees in fourteen weeks during 2001 and in no single week during 2000. This is not enough to raise a genuine issue of material fact as to Marca's status under Title VII.

## II. Affiliate Liability

Walker next argues that Marca should be "deemed covered" by Title VII as part of "an affiliated group of corporations that has in the aggregate the minimum number of employees." *Papa,* 166 F.3d at 939. Though she offers no evidence regarding the size of either company's workforce in 2000 and 2001, Walker argues that employees of Marca's alleged affiliates, East Lake Management Corp. and Burling Builders, Inc. should be counted alongside Marca's employees for purposes of Title VII. In *Papa*, the Seventh Circuit decided that affiliated employers could be considered as a single employer under Title VII in three situations: (1) where traditional conditions for veil piercing are present, (2) where an enterprise splits itself up into a number of corporations, each with fewer than the statutory minimum number of employees, for the express purpose of avoiding liability under the antidiscrimination laws, and (3) where a

5

parent corporation directed the discriminatory act or policy of which the employee of its subsidiary is complaining. *Papa,* 166 F.3d at 941-42. Only the first two possibilities apply here. Walker contends that Marca has an "alter ego relationship" with East Lake Management & Development Corp. and Burling Builders, Inc. that warrants veil piercing and that it has diverted employees to East Lake and Burling in order to evade Title VII liability. We will examine each argument in turn.

### A. Piercing The Corporate Veil

In *Papa*, the Seventh Circuit determined that affiliated entities could be considered together as a single employer under Title VII "where, the traditional conditions being present for 'piercing the veil' to allow a creditor ... to sue a parent or other affiliate, the parent or affiliates of the plaintiff's employer would be liable for the employer's debts." *Papa,* 166 F.3d at 941-942. We note that the Seventh Circuit did not provide a clear indication as to whether courts should apply a federal common law standard of veil piercing, or whether courts should look to the state law of incorporation. *See Papa,* 166 F.3d at 941-42. (citing a body of decisions in federal cases applying various state law veil piercing standards). In its most recent statement on affiliate liability under Title VII the court adopted the following two-part test: "to pierce the corporate veil of each [a]ffiliate (1) 'there must be such unity of interest and ownership [between each affiliate] that the separate personalities ... no longer exist,'" and (2) "'circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" *Worth v. Tyer,* 276 F.3d 249, 260 (7th Cir. 2001)(quoting *Van Dorn Co. v. Future Chem. & Oil Corp.,* 753 F.2d 565, 569-70 (7th Cir. 1985)). This does not wholly clarify matters because the veil piercing issue in *Worth* involved two Illinois corporations, *Worth,* 276 F.3d at

255, and the *Van Dorn* standard the court applied is rooted in Illinois law. *See Van Dorn*, 753 F.2d at 569-70 (quoting *Macaluso v. Jenkins*, 95 Ill. App. 3d 461, 420 N.E.2d 251, 255 (1981) and citing *Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 427 N.E.2d 94, 101 (1981)). But we need not determine the court's intent in this case. As in *Worth*, Walker here accuses Illinois corporations of abusing the corporate form. Whether the court meant to adopt federal standards or to apply Illinois law, it is clear that the *Worth/Van Dorn* test applies.

To demonstrate that veil piercing is appropriate, Walker must show that there is such a "'unity of interest and ownership [between Marca, Burling and Eastlake] that their separate personalities ... no longer exist,'" and that "'circumstances [are] such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" *Worth*, 276 F.3d at 260 (quoting *Van Dorn*, 753 F.2d at 569-70). Walker's evidence falls far short of showing that a genuine factual issue exists on this score.

Walker relies on three alleged facts to show that Marca and its affiliates actually operate as a single entity. First, she points out that Marca, East Lake and Burling all operate out of the same building and are variously owned by members of the same family. Pl's 56.1 Statement, ¶ 11. Next, she contends that East Lake and Marca share a business telephone number and that Gloria Scardino answers telephone calls for both companies. *Id.* at ¶¶ 12, 14. She also claims that Scardino prepares "payroll and quarterly reports" for Marca "but is listed as an employee of East Lake ... and receives no pay from Marca." *Id.* As evidence in support of these allegations, Walker again refers to the audit report conducted on behalf of the Carpenter's Union. *Id.* at ¶¶ 11-15.

Marca generally acknowledges the facts alleged in support of Walker's veil piercing

7

claim, though it disputes the evidence advanced in support of some of her allegations. For example, Marca denies that Scardino answers phone calls for Marca generally, acknowledging only that she prepares the company's payroll and deals with phone calls on Marca financial matters. *See* Def's Reply at 6. In addition, Marca renews its objection to the admissibility of the audit report on hearsay grounds. But we need not resolve these disputes. Reduced to its essence and regarded as true, Walker's support for veil piercing amounts to the observation that Marca receives free payroll assistance and phone support from an affiliated company with whom it shares building space. This is not enough for a jury to conclude that veil piercing is proper. Though Walker suggests some integration between Marca and East Lake's offices, she does not demonstrate the kind of abuse of the corporate form associated with an alter ego relationship. *See Van Dorn,* 753 F.2d at 570. She points to none of the usual symptoms such as failure to maintain adequate corporate records, the commingling of funds or assets, or undercapitalization. Moreover, she makes no attempt to show how Marca and East Lake's shared phone lines and payroll departments might promote injustice or perpetrate fraud on their creditors. *Id.* The family relationship among officers of Marca, East Lake and Burling does not justify treating these affiliates as a single entity.

**B.    Evading Title VII**

Walker also contends that Marca, East Lake and Burling have intentionally diverted employees among themselves, each remaining small enough to avoid Title VII liability. But the little evidence she provides to support this claim is plainly insufficient to raise a genuine issue of fact. Walker emphasizes that Marca receives the benefit of Scardino's payroll services without counting her an employee. Pl's 56.1 Statement, ¶ 13. She also asserts that Pedro Escobar, who

8

she identifies as a union carpenter, was employed by both Marca and Burling during 2000 and 2001. *Id.* at ¶ 15. It is unclear how this evidence could show that Eastlake, Burling and Marca were "splintered into separate corporations in order to defeat the antidiscrimination laws." *Papa,* 166 F.3d at 942. Even if the companies shared employees, no evidence suggests that this was done to defeat Title VII. Further, there is no evidence that the two "shared" employees that Walker identifies have any impact on the size of Marca's workforce relative to the small employer exemption. As we have discussed, counting Scardino among Marca's employees for the years 2000 and 2001 does nothing to alter its qualified employer status. Escobar's employment is undisputed and is already reflected in the calculation of Marca's workforce. *See* Decl. of Eric Higginbottom, Ex. A.

## CONCLUSION

For the reasons stated above, the Court grants defendant's motion for summary judgment [docket item 6-1]. The Clerk is directed to enter judgment in favor of the defendant.

MATTHEW F. KENNELLY
United States District Judge

Date: February 11, 2003